UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                           Plaintiff

v.                                                       Criminal Action No. 3:17-cr-00028-RGJ

DONTA WATTS, JR.                                                                   Defendant

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant, Donta Watts, Jr.'s, Motion to Suppress Searches ("Motion to Suppress"). [DE 60]. Plaintiff, the United States of America, filed a timely response to the Motion to Suppress (the "Response"). [DE 63]. A suppression hearing was held on October 3, 2018. [DE 82]. On December 18, 2018, United States Magistrate Judge Colin H. Lindsay issued a Findings of Fact, Conclusions of Law and Recommendation (the "R&R"), recommending that the Motion to Suppress be denied. [DE 93]. Mr. Watts filed timely Objections. [DE 96]. This matter is now ripe for adjudication.

For the reasons set forth below, the Court **OVERRULES** Defendant's Objections [DE 96], **ACCEPTS** Magistrate Judge Lindsay's R&R without modification [DE 93], and **DENIES** Defendant's Motion to Suppress [DE 60].

**DISCUSSION**

Mr. Watts objects to both the R&R's factual findings and conclusions of law. Mr. Watts objects to the R&R's factual findings by claiming that it exaggerates his criminal history and includes "conclusory testimony that a female passerby raised a concern that evidence might be removed or destroyed." [DE 96, at 387]. Mr. Watts objects to the conclusions of law, asserting four errors in the R&R. First, Mr. Watts objects to the use of his criminal history as support for

1

reasonable suspicion. [DE 96, at 387]. Second, Mr. Watts objects to the reasonableness of his *Terry* stop. [DE 96, at 387–88]. Third, Mr. Watts objects to Magistrate Judge Lindsay's conclusion that Mr. Watts ignored the warrant exception for prevention of the imminent destruction of evidence. [DE 96, at 388–89]. Finally, Mr. Watts objects to the Magistrate's conclusion that finding narcotics in two different vehicles that were stopped after departing the Target Apartment creates a nexus to justify a warrant to search the Apartment. [DE 96, at 389].

A. **Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings [and] enter on the record a recommendation for disposing of the matter, including any proposed finding of fact." Fed. R. Crim. P. 59(b)(1). This Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). The Court need not review under a *de novo* or any other standard those aspects of the report and recommendation to which no specific objection is made, and may adopt the findings and rulings of the magistrate judge to which no specific objection is filed. *Thomas v. Arn*, 474 U.S. 140, 150, 155 (1985).

B. **Objections to the Findings of Fact Contained in the R&R.**

Mr. Watts's first two objections concern the R&R's factual findings. [DE 96, at 367–87]. First, Mr. Watts asserts that his criminal history was exaggerated at the hearing "in an attempt to bolster the [search warrant] affidavit," and that exaggeration continued into the R&R. [DE 96, at 386]. Mr. Watts claims that the R&R states that he had "'convictions for trafficking in cocaine and marijuana;' Whereas, the testimony was that Mr. Watts had 'a trafficking in cocaine'

2

conviction." [DE 96, at 386; DE 85, at 233]. During the hearing, Detective Beckham testified that the CourtNet database was used to ascertain Mr. Watts's criminal history. [DE 85, at 230]. Mr. Watts's CourtNet, information, entered as Government Exhibit 3 at the Suppression Hearing, clearly denotes that Mr. Watts had multiple convictions for trafficking in cocaine and marijuana. He was convicted of trafficking in marijuana in 2009 and trafficking in cocaine in 2010. Therefore, Magistrate Judge Lindsay's Findings of Fact included an accurate criminal history.

Second, Mr. Watts objects to "the finding of fact that a female driver raised a concern regarding the potential destruction of evidence." [DE 96, at 386]. Mr. Watts objects because there is no contemporaneous record to support the testimony given about this statement. [DE 96, at 386]. Defendant Charles Williams was pulled over for a traffic stop after he left the Malibu Court Apartment. [DE 85, at 204, 206–207, 212, 261]. Williams was found in possession of marijuana and heroin. *Id.* During the stop, a female passerby was heard saying something like "they have got Charles." [DE 93, at 372; DN 85, at 204, 262]. The two officers conducting the stop, Detective Farmer and Sergeant Luckett, both testified that they heard this or a similar statement, and that it "made them concerned that someone was being alerted that Williams had been arrested." [DE 93, at 372; DE 85, at 204–05; 262].

"The Magistrate Judge, as the fact-finder who sees and hears witnesses, is uniquely situated to assess the credibility of the witnesses. Thus, this Court must 'accord[] great deference to such credibility determinations.'" *United States v. Conway*, No. 17-43-DLB-CJS, 2018 WL 3435353, at *5 (E.D. Ky. July 17, 2018); *United States v. Crawford*, No. 17-34-DLB-CJS, 2018 WL 3388135, at * 10 (E.D. Ky. July 12, 2018). Magistrate Judge Lindsay was able to assess the credibility of Detective Farmer and Sergeant Luckett's testimony and his decision to accept the officer's statements should be give deference.

3

Accordingly, the Court overrules Mr. Watts's objections to the findings of fact contained in the R&R. The R&R's factual findings are thus incorporated by reference and relied on as true for purposes of discussing Mr. Watts's objections to Magistrate Judge Lindsay's legal analysis.

**C. Objection to Use of Criminal History as Support for Reasonable Suspicion.**

Mr. Watts objects to the Magistrate Judge's conclusion that his past criminal convictions for drug trafficking were a contributing factor that supported a reasonable suspicion to stop him. [DE 96, at 387]. Mr. Watts states that the remaining facts were insufficient to support reasonable suspicion because his past criminal conviction cannot support reasonable suspicion. *Id.* Reasonable suspicion does not rise to the level of probable cause and falls short of the preponderance of the evidence standard. *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). In justifying reasonable suspicion, an officer must rely on more than a hunch and "must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). "An investigative stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). When determining whether reasonable suspicion exists, the Court must look at the totality of the circumstances. *Arvizu*, 534 U.S. at 273; *United States v. Younger*, 707 F.3d 598, 603 (6th Cir. 2012). This means that one factor, such as a defendant's criminal history, will not be dispositive of whether reasonable suspicion exists.

In this case, the officers relied on many facts to support reasonable suspicion for a stop. These facts include: police observation that Mr. Watts made short stays at the Target Apartment for the past month, behavior consistent with drug trafficking [DE 85, at 220–21]; Mr. Watts made short stays at the Target Apartment on the day of his arrest [DE 60-2, at 145]; Mr. Watts had past

4

criminal convictions for drug trafficking [DE 85, at 230–33]; Mr. Watts was seen carrying items out of the Target Apartment in trash bags [DE 60-2, at 145]; the police recovered drugs from Charles Williams, a separate suspect who had also made short stays at the Target Apartment on the day of Mr. Watts's arrest and had departed the Apartment immediately prior to the stop in which the drugs were found [DE 60-2, 145]; and Mr. Watts fled from the police when they attempted to initiate a stop [DE 85, at 283–85; DE 60-2, at 145].[1]

Under the totality of the circumstances, these facts were sufficient to support a reasonable suspicion to stop Mr. Watts. Even if Mr. Watts's criminal history was not a contributing factor to support reasonable suspicion,[2] any reasonable police officer would find these facts sufficient to infer that Mr. Watts was engaging in or was about to engage in criminal activity. Therefore, this Court adopts the finding and reasoning of Magistrate Judge Lindsay in holding that the stop of Mr. Watts was sufficiently supported by reasonable suspicion and that Watts's past criminal history was a contributing factor to that reasonable suspicion.

**D. Objection to Reasonableness of *Terry* Stop.**

Mr. Watts objects to Magistrate Judge Lindsay's conclusion that the *Terry* stop was reasonable. [DE 93, at 377–78]. Mr. Watts claims that there is no distinction between *Terry* stops/frisks and an investigative stop. [DE 96, at 387–88]. Mr. Watts argues that he "referred to both unlawful investigative stops and *Terry* stops in his original motion and in his post-hearing brief. The stop of Mr. Watts was not reasonable." [DE 96, at 388]. This is the entirety of Mr. Watts objection on this issue. [DE 96, at 387–88].

---

[1] While Mr. Watts's flight may have been considered in the reasonable suspicion analysis for Detective Beckham, it cannot be considered in the reasonable suspicion analysis for Detective Witt because Detective Witt had already attempted to initiate a stop before Mr. Watts fled. [DE 85, at 284–85, 287, 293].
[2] *See United States v. Stepp*, 680 F.3d 651, 667 (6th Cir. 2012) (defendant's criminal history reports were one relevant factor that supported reasonable suspicion to stop because the reports were "specific and related to the same suspicions the officer was developing").

An "objection . . . that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge." *Altyg*, 2017 WL 4296604, at *1. Moreover, Mr. Watts purported objection is nothing more than a simple disagreement with Judge Lindsay's conclusion on this issue. *Ocampo,* 919 F. Supp.2d at 910. "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Id.* at 747. Consequently, the filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. *Id.* at 747–48; *see also, Miller*, 50 F.3d at 380; *Cole*, 7 F. App'x at 356.

However, even if the Court were to consider the merits of this objection, the R&R is well-reasoned on this issue. First, a *Terry* stop and frisk is distinct from an investigatory stop.[3] In this case, the police conducted an investigatory stop of Mr. Watts. Mr. Watts was stopped based on reasonable suspicion of criminal activity and to detain and interrogate him. A number of factors contributed to the reasonableness of the investigatory stop. These factors include: observation of Mr. Watts making short stays at the Target Apartment for the past month [DE 85, 220–21]; observation of Mr. Watts making short stays at the Target Apartment on the day of his arrest [DE 60-2, at 145]; Mr. Watts's criminal history of drug trafficking [DE 85, at 230–33]; recovery of narcotics from Charles Williams, who had made shorts stays at the Target Apartment and had departed the Apartment immediately prior to the traffic stop in which the narcotics were recovered

---

[3] *Terry* was a narrow opinion that permitted police to conduct a protective *Terry* stop and frisk when they had a reasonable suspicion of criminal activity and a reasonable belief that the individual was armed. 392 U.S. at 1. *Terry* did not address whether police could conduct investigatory stops based on reasonable suspicion of criminal activity. *Id.* at 19 n. 16. The Court addresses this question in *Adams v. Williams*, in which the Court recognized that investigatory stops—*i.e.*, stops that allowed for detention and interrogation instead of a brief stop and frisk—could be conducted by police based on reasonable suspicion of criminal activity. *Adams v. Williams,* 407 U.S. 143 (1972); *see also Florida v. Royer*, 460 U.S. 491, 499–500 (1983).

[DE 60-2, at 145]; and observation of Mr. Watts carrying items in trash bags out of the Target Apartment [DE 60-2, at 145]. Additionally, when the police attempted to stop Mr. Watts, he fled, another fact that can support reasonable suspicion. [DE 60-2, at 145; DE 93, at 377–78]. The Supreme Court has held that "[h]eadlong flight–wherever it occurs–is the consummate act of evasion: [i]t is not necessarily indicative of wrongdoing, but is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). In assessing the totality of the circumstances, the police acted on more than just a hunch and had the requisite reasonable suspicion to justify an investigative stop.

E. **Objection to Destruction of Evidence Exception to the Warrant Requirement.**

Mr. Watts objects to Magistrate Judge Lindsay's conclusion that Mr. Watts ignored the warrant exception for prevention of the imminent destruction of evidence. [DE 93, at 378]. Mr. Watts argues that "there was no reasonable belief that destruction of evidence was imminent." [DE 96, at 388]. The warrant exception for prevention of the imminent destruction of evidence has no bearing on this case. Prior to Mr. Watts's post-hearing brief [DE 89], neither the United States nor Mr. Watts asserted that the destruction-of-evidence warrant exception was relevant to the searches conducted in this case [DE 60; DE 63; DE 85].

The warrant exceptions can be used to validate warrantless searches or seizures. *See Katz v. United States*, 389 U.S. 347, 357 (1967). The destruction-of-evidence warrant exception was not used in this case to justify any warrantless search. After the traffic stop of Charles Williams and his arrest, the only other searches conducted by the police were the investigatory stop of Mr. Watts [DE 85, at 210–11, 235–38, 285–89; DE 60-2, at 145], the search of Mr. Watts's vehicle after he fled [DE 85, at 240, 269], and a search of the Malibu Court Apartment [DE 60-2]. None of these searches was justified by the exception for the prevention of the imminent destruction of evidence. The investigatory stop of Mr. Watts was justified by the investigatory stop exception to

7

the warrant requirement. The search of his vehicle was justified by the vehicle exception. The search of the Malibu Court Apartment was not even a warrantless search and was justified by the search warrant the police had obtained.

An investigatory stop is an exception to the warrant requirement and must only be supported by reasonable suspicion of criminal activity. *Terry*, 392 U.S. at 20–21; *Adams v. Williams*, 407 U.S. 143 (1972); *Florida v. Royer*, 460 U.S. 491, 499–500 (1983). As stated above, the police had reasonable suspicion to stop Mr. Watts based on the observations they made at the Target Apartment [DE 85, at 220–21; 60-2, at 145], Mr. Watts's criminal history [DE 85, at 230–33], the traffic stop of Charles Williams [DE 60-2, at 145], and the fact that Mr. Watts fled when the police attempted to initiate the stop [DE 85, at 235–36, 285; DE 60-2, at 145].

Another exception to the warrant requirement is the vehicle exception. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). Under this exception, the police need probable cause to search a car. *United States v. Ross*, 465 U.S. 798, 808 (1982). If there is probable cause for the existence of illegal drugs in the car, the vehicle exception applies. *Dyson*, 527 U.S. at 465. In this case, the police had probable cause to believe that drugs were in Mr. Watts's vehicle. The police observed Mr. Watts carrying trash bags out of the Target Apartment and placing them in his vehicle shortly after the stop of Charles Williams which had uncovered drugs. [DE 85, at 283–84]. When the police attempted to perform an investigatory stop on Mr. Watts, he fled. [DE 85, at 235–36, 285; DE 60-2, at 145]. After apprehending Mr. Watts, the officers approached the vehicle and, in plain view, could see a tray with residue they suspected to be heroin in one of the trash bags placed in the car. [DE 85, at 269]. These facts were sufficient to establish probable cause to search the car.

The Malibu Court Apartment search was not a warrantless search. The warrant exceptions are not necessary to validate a search warrant, which must be supported by probable cause. The

8

police obtained a search warrant for the Target Apartment that was supported by probable cause. [DE 60-2]. As detailed below, the police established a sufficient nexus between the evidence sought and the place to the searched to support the issuance of a search warrant for the Apartment. Therefore, because the search of the Apartment was not a warrantless search, a warrant exception, like the destruction of evidence exception, is not necessary to validate the search.

**F. Objection to Probable Cause for Search of Malibu Court Apartment.**

Mr. Watts objects to the conclusion that a sufficient nexus was formed to justify a warrant to search the Malibu Court Apartment. [DE 96, at 389]. Specifically, Mr. Watts objects that "narcotics being found in two different vehicles that were stopped after having departed the Target Apartment provides a sufficient nexus." [DE 96, at 389].

As stated above, the investigative stop of Mr. Watts was lawful and supported by reasonable suspicion. As the search was lawful, the information learned from the stop could be used to obtain a search warrant for the Target Apartment. [DE 93, at 380]. To establish probable cause for a search warrant for a residence, an officer is only required to establish a sufficient nexus between "the place to be searched and the evidence sought." *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998). It does not necessarily require them to witness illicit activity at the place to be searched as Mr. Watts contends in his Motion. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983) ("only the probability and not a prima facie showing, of criminal activity is the standard of probable cause") (internal quotation marks and citations omitted).

A sufficient nexus will be formed between the place to be searched and the evidence sought if an individual is found with drugs immediately after leaving a residence. *See United States v. Hobbs,* 509 F.3d 353 (7th Cir. 2007) (sufficient nexus was established between defendant's residence and the evidence sought after he was discovered with large amount of cocaine

9

immediately after leaving his residence). Similarly, in this case, Charles Williams was discovered with a large amount of narcotics immediately after leaving the Target Apartment. [DE 60-2, at 145]. This incident alone is enough to establish a nexus to the Apartment to justify a warrant to search the Apartment.

Mr. Watts objects to the conclusion that the narcotics found in his vehicle after departing the Apartment established a nexus to justify a search warrant for the Apartment as well. [DE 96, at 389]. As the drugs were discovered in Mr. Watts's vehicle immediately after he left the Apartment, a nexus is formed to support probable cause. However, these drugs were also directly linked to the Apartment. The police observed Mr. Watts carrying numerous trash bags, including one that contained a tray, out of the Apartment and place them in his vehicle. [DE 60-2, at 145; DE 85, at 283–84]. After apprehending Mr. Watts, the officers approached his vehicle and saw a substance that appeared to be heroin located on a tray in one of the trash bags in plain view. [DE 85, at 240, 269]. This establishes a nexus to justify a search warrant for the Apartment as the police observed the evidence sought, the drugs, being carried out of the Apartment, the place to be searched. Therefore, the narcotics found in two different vehicles that were stopped after leaving the Target Apartment provide a nexus to the Apartment to justify a warrant.

## CONCLUSION

Accordingly, for the reasons stated herein, and being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) The **Report and Recommendation** of the United States Magistrate Judge, [DE 93], is **accepted without modification** as the findings of fact and conclusions of law of this Court;

(2) Defendant's Objections, [DE 96], are **overruled** as set forth herein;

(3) Defendant's Motion to Suppress, [DE 60], is **DENIED;** and

(4)　This matter is set for an in-person status conference on **March 7, 2019 at 10:45 a.m.** at the Gene Snyder United States Courthouse before the Honorable Rebecca Grady Jennings, United States District Judge. Counsel shall advise Judge Jennings's Case Manager, Andrea Morgan, in advance if they wish to convert the status conference to a change-of-plea hearing.

Cc:　Counsel of record